No. 94-226

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

TERI LYNN CLYATT,

     Petitioner and Respondent,

  and

EUGENE GIBSON CLYATT,

     Respondent and Appellant.

FILED

OCT 13 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

     Christopher Daly, Missoula, Montana

     For Respondent:

     Douglas G. Skjelset, Skjelset Law Offices,
Missoula, Montana


     Submitted on Briefs:  August 11, 1994

     Decided:  October 13, 1994

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Eugene Clyatt, Jr., appeals from the denial of his motion to modify his child support obligations by the Fourth Judicial District Court, Missoula County. We affirm.

The issue is whether the District Court abused its discretion in denying Eugene's motion to modify his child support obligations.

Teri Clyatt and Eugene Clyatt, Jr., were married in July, 1987. One child was born of this marriage, Amanda Jean Clyatt. Teri and Eugene were divorced in January, 1992. The District Court granted joint custody and appointed Teri primary residential parent. The court ordered Eugene to pay Teri $300 per month for child support. Eugene made the required payments from the time of the divorce decree until July, 1993. He failed to make support payments for the months of July, August, September, and October of 1993. Eugene also failed to pay for one-half of his daughter's medical expenses for which he was responsible.

Teri moved the District Court to order Eugene to show cause why he should not be held in contempt of court for his failure to pay child support. Following a hearing, the court found Eugene in contempt of court for failing to pay his child support obligations. Eugene then moved the District Court to reconsider its contempt of court ruling and to modify his child support obligation. The court denied both motions. Eugene appeals only the court's denial of his motion to modify the child support obligation.

The **District** Court based its decision on the following **facts.** Prior to and immediately following the divorce, Eugene worked for his father at Clyatt Construction Company. While employed at Clyatt Construction, Eugene had sufficient income to pay the $300 per month child support obligation. He voluntarily **quit** his job with Clyatt Construction due to personal problems between him and his father. Eugene did not seek alternative construction employment, despite having experience and expertise in that field. Rather, he enrolled in college at the University of Montana. Eugene worked part-time at McDonald-Armstrong Investment, Limited, earning a net income of approximately $460 per month. He lived with his parents and paid no rent. **His** parents paid for his college tuition.

* * *

Did the District Court abuse its discretion when it denied Eugene's motion to modify his child support obligation?

Eugene argues that the District Court should have modified his child support obligation. Before a child support obligation can be modified, a party must establish that there are changed circumstances so substantial and continuing as to make the terms of the existing agreement unconscionable. Section 40-4-208(2)(b), MCA. The District Court found that no substantial and continuing change in circumstances existed. As such, the court did not address whether the alleged changed circumstance rendered the terms of the agreement unconscionable.

3

We will not disturb the District Court's ruling absent a clear abuse of discretion. In Re the Marriage of Durbin (1991), 251 Mont. 51, 55, 823 P.2d 243, 245. This Court gives great deference to the trial court's judgment, presuming its decision to be correct. In Re the Marriage of Carlson (1984), 214 Mont. 209, 214, 693 P.2d 496, 499.

The District Court found that Eugene did not show a substantial and continuing change in circumstances. There is sufficient evidence in the record to uphold this finding. Eugene voluntarily quit his employment with Clyatt Construction and did not actively seek other employment in the construction field. Eugene admits he is a skiiied carpenter, yet he chose to return to school rather than remain employed in the construction business. Eugene's current employment condition was clearly of his own making.

When an individual voluntarily decreases his or her ability to pay child support, it is up the district court to determine whether there has been a substantial and continuing change in circumstances. In In Re the Marriage of Rome (1981), 190 Mont. 495, 497, 621 P.2d 1090, 1092, the father voluntarily left his employment in the hardware business and began a less lucrative career in the logging industry. In upholding the district court's denial of the father's motion to modify his child support payments, this Court stated:

> Although we hold that a reduction in ability to pay brought about through a voluntary change in circumstances is not, in itself, sufficient to mandate a modification of support, neither do we approve the view that self-imposed changes can never be considered as reasons for

4

> modification. The better approach is to allow the judge to consider the nature of the changes and the reasons for the changes, and then to determine whether, under all the circumstances, a modification is warranted.

Rome, 621 P.2d at 1092.

There is substantial evidence in this case that Eugene voluntarily terminated his employment with Clyatt Construction and did not attempt to procure substitute employment in the field in which he was skilled. It therefore was within the discretion of the District Court to determine that no substantial and continuing change in circumstances existed.

District courts should consider several factors when determining whether a parent can meet his or her current child support obligations or if such support obligations should be modified, including:

> (1) The parent's ability to earn an income:
> (2) The parent's willingness to earn an income and support his child:
> (3) The availability of jobs:
> (4) The parent's use of his funds to provide himself only with the bare necessities of life prior to providing support for his child.

In Re the Marriage of Callahan (1988), 233 Mont. 465, 469, 762 P.2d 205, 208 (emphasis added). The record indicates that Eugene was able to earn an income sufficient to pay his child support obligation while working at Clyatt Construction. The record likewise reflects his unwillingness to support his child by voluntarily quitting his construction job and returning to school. Taking these factors into consideration, the District Court did not

5

abuse its discretion in finding that Eugene's choice to quit his job and subsequently return to school did not constitute a substantial and continuing change in circumstances.

Eugene argues that the District Court erred in not making a finding concerning unconscionability. We find no merit in this argument. This Court recently indicated that a change in circumstances and unconscionability are two distinct factors which must be independently established. In In Re the Marriage of Barnard (Mont. 1994), 870 P.2d 91, 51 St.Rep. 173, we stated:

> It is obvious that Timothy's financial success constitutes a change in circumstance. However, this fact, by itself, does not render the prior child support award unconscionable.

Barnard, 870 P.2d at 93-94. Changed circumstances and unconscionability are clearly two separate factors that the court can address independently of each other.

Section 40-4-208(2)(b), MCA, likewise suggests that a finding of changed circumstances is a prerequisite to any inquiry into the unconscionability of the agreement:

> Whenever the decree proposed for modification contains provisions relating to maintenance or support, modification under subsection (1) may only be made:
> (i) upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable . . . .

Absent a finding of changed circumstances, the court's analysis need go no further. Only after finding that the circumstances surrounding the child support obligation have substantially and

6

continually changed must the court make a determination concerning unconscionability.

The District Court denied Eugene's motion for modification of his child support obligation because it found no substantial and continuing change in circumstances. The District Court stated:

> The Court finds that [Eugene] has shown little initiative to provide support for his child, despite his contentions to the contrary. While his stated goal of furthering his education is commendable, it does not override his obligation to provide his child with support, <u>nor constitute changed circumstance.</u>

(Emphasis added.)

We conclude that the court did not abuse its discretion in finding that no substantial or continuing change in circumstances existed. We therefore affirm the decision of the District Court.

We need not address Eugene's argument regarding § 40-4-204, MCA. Section 40-4-204(3)(a), MCA, states:

> Whenever a court issues or modifies an order concerning child support, the court shall determine the child support obligation by applying the standards in this section and the uniform child support guidelines . . . .

Since we conclude that the District Court properly denied modification of the child support obligation, the child support guidelines do not come into effect. We affirm the decision of the District Court.

_____
Chief Justice

7

We concur:

_John Conway Harrison_

_William E. Hunt Sr._

_[signature]_
Justices

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion. I would reverse the judgment of the District Court.

Although the record in this case is less than satisfactory, it must be pointed out that due to his economic circumstances, Eugene proceeded pro se at all times prior to the District Court's order which held him in contempt for failure to pay child support. There is no indication that he was represented when Teri filed her petition for dissolution, or when he signed the property settlement agreement which formed the basis for the District Court's January 7, 1992, decree. Finally, he was unrepresented at the only hearing held in this matter on October 12, 1993.

However, even the uninformed testimony given at that hearing established a change in circumstances since the date of the parties' dissolution decree which was so substantial that his original child support obligation was unconscionable. The District Court's failure to modify the support obligation was unsupported by substantial evidence, and therefore, an abuse of discretion.

The uncontroverted evidence established that at the time he consented to the dissolution decree, Eugene worked as a carpenter for his father's construction business. However, due to differences with his father, they mutually agreed to the termination of his employment shortly after the decree was entered. Eugene testified, without contradiction, that from January 1992 until the date of his hearing, his gross income was $7973.60, while

9

his child support obligation alone was $5380. He had no automobile, no savings, and no other assets.

Eugene had never worked as a carpenter for anyone other than his father. After terminating his employment with his father, he realized that there were numerous carpenters in Missoula, but few construction jobs. Therefore, he decided that it would be in his, as well as his child's, best interest that he reeducate himself, so he returned to school as a full-time student.

At the time of the only hearing that was held in this case, Eugene was working at McDonalds 24 hours a week, earning $5.25 per hour. His net income was $460 per month.

At the time of his hearing, Eugene proposed that his support obligation be temporarily modified, based on his reduced income, to conform to the Child Support Guidelines, and that the court establish a schedule on which he could repay his past-due support obligation. He was unable to do more.

Instead, on November 8, 1993, the District Court entered its order finding him in contempt of court for failure to pay child support and ordered that: he purge himself from contempt by executing a wage assignment in the amount of $300 per month: pay his wife's attorney fees in the amount of $242.50; pay costs in the amount of $15.50; and pay medical bills in the amount of $327.50 within 15 days.

Section 40-4-208(2)(b), MCA, provides in relevant part as follows:

> Whenever the decree proposed for modification contains provisions relating to maintenance or support, modification under subsection (1) may only be made:
> (i) upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable . . . .

A district court's decision to modify or deny modification of a child support obligation is reviewed for an abuse of discretion. In this case, I conclude there clearly was an abuse of discretion when, under the above circumstances, the District Court found that Eugene was capable of making child support payments in the amount of $300 per month: and that he quit his carpentry job only because he did not enjoy it.

The District Court made no specific findings regarding a change in circumstances or the conscionability of Eugene's child support obligation--the factors to be considered under § 40-4-208, MCA. However, in the court's later opinion and order denying Eugene's motions for reconsideration and modification, the District Court stated:

> The Court finds that the respondent has shown little initiative to provide support for his child, despite his contentions to the contrary. While his stated goal of furthering his education is commendable, it does not override his obligation to provide his child with support, nor constitute changed circumstance. Other fathers in similar circumstances have been diligent enough to pursue an education and provide for their children. Such is not beyond the ability of the respondent.

To the extent that these remarks by the District Court constitute its findings, they were also clearly erroneous and unsupported by any evidence in the record.

11

The evidence was that Eugene had borrowed substantial amounts of money since going back to school in an effort to make child support payments, but was apparently unable to continue doing so. With no assets, that should not be surprising. Furthermore, assuming that what other fathers had done under similar circumstances may have been relevant, there was simply no evidence of what any other father had done.

The majority concludes that when a person voluntarily terminates his employment, and thereby sustains a reduction in income, it is completely up to the district court's discretion to determine whether a modification is warranted. However, that discretion is not unlimited. Where, as in this case, there were sound reasons for Eugene's termination of his employment, and sound economic reasons for his reeducation, this Court has not served anyone's best interest by punishing him for seeking the reeducation he needs. Where a parent makes reasonable progress toward reeducation with the objective of improving his earning capacity, it is in both his best interest, and the long-term best interest of his child, that he be encouraged, not discouraged, from doing so.

The District Court has imposed a harsh obligation which Eugene is unable to meet. The alternative is that he go to jail. However, there will be little benefit to his child from his incarceration. Any pride taken by the District Court and this Court in their assumption that they have enforced another recalcitrant father's child support obligation is unfounded. This decision will, in the long term, punish the very child it seeks to

12

benefit.   The District Court's decision, and this Court's opinion affirming that decision, are shortsighted and serve no one's best interest.

For these reasons,  I would reverse the judgment of the District Court.

_____Tom Trieweiler_____
Justice
